Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES,  NATIVE ECOSYSTEMS COUNCIL,<br><br>      Plaintiffs,<br>vs.<br><br>LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>      Defendants. | CV-<br><br><br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

# I. INTRODUCTION

1.   This is a civil action for judicial review under the Administrative Procedure
     Act of the U.S. Forest Service's (Forest Service) authorizations, analyses, and
     lack thereof related to and regarding the Moosehorn Ditch Timber Sale
     (Timber Sale) on the Beaverhead-Deerlodge National Forest (Forest).

2.   Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council attest
     that the agency's authorizations, analyses, and lack thereof constitute agency
     action unlawfully withheld or unreasonably delayed, and/or are arbitrary and
     capricious, an abuse of discretion, and/or otherwise not in accordance with
     law, and/or in excess of statutory jurisdiction, authority, or limitations, or
     short of statutory right, and/or without observance of procedure required by
     law.

3.   Defendants' actions or omissions violate the National Environmental Policy
     Act (NEPA), 42 U.S.C. 4331 *et seq.*, the National Forest Management Act
     (NFMA), 16 U.S.C. § 1600 *et seq.*, and the Administrative Procedure Act
     (APA), 5 U.S.C. §§ 701 *et seq.*

4.   Plaintiffs seek a declaratory judgment, injunctive relief, the award of costs
     and expenses of suit, including attorney and expert witness fees pursuant to
     the Equal Access to Justice Act, 28 U.S.C. § 2412, and such other relief as

1

this Court deems just and proper.

## II. JURISDICTION

5.  This action arises under the laws of the United States and involves the United States as a Defendant. Therefore, this Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. §§ 1331, 1346.

6.  An actual controversy exists between Plaintiffs and Defendants.  Plaintiffs' members use and enjoy the Beaverhead-Deerlodge National Forest for hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other vocational, scientific, spiritual, and recreational activities.  Plaintiffs' members intend to continue to use and enjoy the area frequently and on an ongoing basis in the future.

7.  The aesthetic, recreational, scientific, spiritual, and educational interests of Plaintiffs' members have been and will be adversely affected and irreparably injured by the Timber Sale.  These are actual, concrete injuries caused by Defendants' failure to comply with mandatory duties under NFMA, NEPA, and the APA. The requested relief would redress these injuries and this Court has the authority to grant Plaintiffs' requested relief under 28 U.S.C. §§ 2201 & 2202, and 5 U.S.C. §§ 705 & 706.

8.   Defendants failed to provide scoping, a public notice and comment period, or an objection or administrative appeal process for the Timber Sale; thus, there were no administrative remedies available to Plaintiffs in this case. Therefore, the Court has jurisdiction to review Plaintiffs' APA claims.

## III. VENUE

9.   Venue in this case is proper under 28 U.S.C. § 1391(e).  Defendant Marten resides within the Missoula Division of the United States District Court for the District of Montana.

## IV. PARTIES

10.  Plaintiff ALLIANCE FOR THE WILD ROCKIES is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems.  Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Montana.  Members of the Alliance observe, enjoy, and appreciate Montana's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Timber Sale area in the Beaverhead-Deerlodge National Forest.  Alliance's members' professional and recreational activities are

3

directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems as set forth below. Alliance for the Wild Rockies brings this action on its own behalf and on behalf of its adversely affected members.

11. Plaintiff NATIVE ECOSYSTEMS COUNCIL is a non-profit Montana corporation with its principal place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of natural resources on public lands in the Northern Rockies. Its members use and will continue to use the Beaverhead-Deerlodge National Forest for work and for outdoor recreation of all kinds, including fishing, hunting, hiking, horseback riding, and cross-country skiing. The Forest Service's unlawful actions adversely affect Native Ecosystems Council's organizational interests, as well as its members' use and enjoyment of the Beaverhead-Deerlodge National Forest, including the Timber Sale area. Native Ecosystems Council brings this action on its own behalf and on behalf of its adversely affected members.

12. Defendant LEANNE MARTEN is the Regional Forester for the Northern Region/Region One of the U.S. Forest Service, and in that capacity is charged with ultimate responsibility for ensuring that decisions made at each National Forest in the Northern Region, including the Beaverhead-Deerlodge National

Forest, are consistent with applicable laws, regulations, and official policies and procedures.

13.   Defendant UNITED STATES FOREST SERVICE (Forest Service) is an administrative agency within the U.S. Department of Agriculture, and is responsible for the lawful management of our National Forests, including the Beaverhead-Deerlodge National Forest.

## V.  FACTUAL ALLEGATIONS

14.   On October 8, 2015, the Director of Plaintiff Native Ecosystems Council (Council) was visiting the area affected by the Timber Sale for the purpose of monitoring livestock fencing around aspen stands in the area.  Council's Director observed extensive clearcutting in the area, including on areas of National Forest public land.

15.   Council was unaware that the Forest Service had authorized a timber sale in the area. On October 15, 2015 Council sent a Freedom of Information Act request to the Forest Service:  "Native Ecosystems Council (NEC) and the Alliance for the Wild Rockies (AWR) are requesting agency information on these activities, including the associated National Environmental Policy Act (NEPA) procedures that preceded these activities, including public involvement, and the actual timber sale contract for this ongoing logging,

5

including requirements for sale area 'clean-up' after logging."

16.    Council further requested:

"1. A 'hard copy' of all NEPA procedures, including public

involvement, for the past and ongoing logging activities on Forest

Service lands along an irrigation ditch located in sections 22 and 27 (T

6N, R 16 W);

2. A 'hard copy' of the timber sale contract for the above logging

activities, including sale area management plans."

17.    On November 6, 2015,  staff from the Beaverhead-Deerlodge National Forest

responded to Plaintiff's request:

"1. A copy of all NEPA procedures, including public involvement, for

the past and ongoing logging activities on Forest Service lands along an

irrigation ditch located in sections 22 and27(T6N, R 16 W)

*Response: This item has been referred to our Regional Office for*

*response.*

2. A copy of the timber sale contract for the above logging activities,

including sale area management plans.

*Response: Enclosed are 113 pages of responsive documents.*"

18.    On November 12, 2015, Defendant Marten responded to Plaintiff's request

on behalf of the Regional Office: "Staffs on the Beaverhead-Deerlodge

National Forest have searched their files and found no records in response to

Item 1 of your request. This concludes our response to your FOIA request."

19.    The Forest Service has no records of any NEPA public process for the

Timber Sale because it did not conduct a NEPA public process for the

Timber Sale.

20.    On December 31, 2015, Plaintiff Alliance for the Wild Rockies sent a similar

FOIA request for the following information:

"1. 'Sale Area Map' for the Moosehorn Ditch Salvage Timber Sale.

2. All NEPA analysis and decisions and public notice and participation

documents for the Moosehorn Ditch Salvage Timber Sale.

3. All ESA consultation documents for the Moosehorn Ditch Salvage

Timber Sale.

4. All analysis documents that demonstrate that the Moosehorn Ditch

Salvage Timber Sale complies with NFMA and the BDNF Forest

Plan."

21.    On February 5, 2016, Defendant Marten responded to the request (emphasis

added): " Via letter from the Beaverhead-Deerlodge National Forest, dated

February 1, 2016, you were provided records in response to Items 1, 3, and 4.

7

*Staffs on the Beaverhead-Deerlodge National Forest searched their files and found no records responsive to Item 2 of your request.* Work done is considered routine maintenance consisting of removal of hazard trees along a private linear right-of-way, 36 CPR 251.50(e)(3).  This concludes our response to your FOIA request."

22.   The reason the Forest Service "found no records responsive to Item 2," i.e. Alliance's request for NEPA documentation, is because the Forest Service did not conduct a NEPA process for the Moosehorn Timber Sale.

23.   The only document provided by the Forest Service that is responsive to Item 3 is a document entitled entitled  "FW_MoosehornESA.pdf":

> From: Riebe, Russell -FS
> To: Rodreick, Leona M -FS
> Subject: FW: Moosehorn
> Date: Thursday, January 28, 2016 11:24:07 AM
>
> In response to AWR FOIA item #3
>
> [signature block omitted]
>
> From: Roose, Jenna M -FS
> Sent: Thursday, January 28, 2016 11:22 AM
> To: Riebe, Russell -FS <rriebe@fs.fed.us>
> Subject: Moosehorn
>
> Based on our conversations:

The Moosehorn ditch clearing targeted removal of dead lodgepole pine trees –which is not snowshoe hare habitat.

There are no grizzly bears or Canada lynx known or expected in the action area.

Therefore: No Effect to Canada lynx or Grizzly bears with clearing Moosehorn ditch.

[signature block omitted]

24.   The only document provided by the Forest Service that is responsive to Item 4 is a document entitled "FP_ConformReview.pdf," which is a one page document with one phrase that states "[a]ction reviewed for consistency with RFP Objectives and Stds" next to a "Y" with no explanatory remarks or citations.

25.   A review of the Forest Service's FOIA responses indicates that on February 25, 2014, the Forest Service awarded a no-bid timber sale contract for the Moosehorn Ditch Timber Sale on the Wisdom Ranger District of the Beaverhead-Deerlodge National Forest.

26.   The Timber Sale area is 845 acres.

27.     The Timber Sale includes 89 acres of clearcutting in one contiguous cut.

28.     The Timber Sale occurs in an area where the Forest Service has documented at least seven lynx sightings within a 15 mile radius.

29.     The Timber Sale occurs in lodgepole pine, which is considered "lynx habitat" under the Northern Rockies Lynx Management Direction

30.     The best available science indicates that clearcutting is harmful to lynx because lynx avoid clearcuts.

31.     At least one grizzly bear has been documented in the nearby Anaconda-Pintler Wilderness Area.

32.     Numerous other sensitive species and species of interest have been sighted within a 15 mile radius of the Timber Sale, including goshawks (including nests), wolverines, sage grouse (including a lek), Northern Rockies fishers, gray wolves, black-backed woodpeckers, pileated woodpeckers, northern bog lemmings, Brewer's sparrows, and great gray owls.

## VI.  CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

The Forest Service's failure to engage in a NEPA process for the Moosehorn Timber Sale violates NEPA.

33.     All previous paragraphs are incorporated by reference.

34.     NEPA requires that agencies take a "hard look" at the environmental consequences of their proposed actions before the agencies choose a particular course of action.

35.     NEPA requires federal agencies to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

36.     "Major federal actions" include "new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies [and] new or revised agency rules, regulations, plans, policies, or procedures . . . ." 40 C.F.R. §1508.18(a).

37.     Major federal actions also include the "[a]pproval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities." 40 C.F.R. §1508.18(b)(4).

38.     Federal regulations permit an agency planning a major federal action to conduct an Environmental Assessment in order to determine whether it must prepare an EIS.  40 C.F.R. §1508.9.

39.     If the EA shows that the proposed action will have no significant impact, the agency may issue a finding of no significant impact ("FONSI") and Decision

11

Notice.  40 C.F.R. §1501.4; 36 C.F.R. §220.3.

40.   If however, the EA shows that the proposed activity will have a significant impact, the federal agency must prepare an EIS before proceeding with the proposed activity.  *Id.*

41.   If the agency prepares an EIS, it must document its final decision in a Record of Decision.  40 C.F.R. §1505.2.

42.   Alternatively, an agency may invoke a "categorical exclusion" to NEPA analysis if the action falls within "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required." 40 C.F.R. § 1508.4.

43.   If an agency decides to use a categorical exclusion, it must prepare a Decision Memo documenting the decision.  36 C.F.R. §220.3.

44.   "Scoping" is required for all Forest Service proposed actions, including those that would appear to be categorically excluded from further analysis and documentation in an EA or an EIS.  36 C.F.R. §220.4.

45.     Scoping shall be carried out in accordance with the requirements of 40 C.F.R. §1501.7.  36 C.F.R. § 220.4.

46.     As part of the scoping process the lead agency shall:

(1) Invite the participation of affected Federal, State, and local agencies, any affected Indian tribe, the proponent of the action, and other interested persons (including those who might not be in accord with the action on environmental grounds), unless there is a limited exception under § 1507.3(c). An agency may give notice in accordance with § 1506.6.

(2) Determine the scope (§ 1508.25) and the significant issues to be analyzed in depth in the environmental impact statement.

(3) Identify and eliminate from detailed study the issues which are not significant or which have been covered by prior environmental review (§ 1506.3), narrowing the discussion of these issues in the statement to a brief presentation of why they will not have a significant effect on the human environment or providing a reference to their coverage elsewhere.

(4) Allocate assignments for preparation of the environmental impact

13

statement among the lead and cooperating agencies, with the lead

agency retaining responsibility for the statement.

(5) Indicate any public environmental assessments and other

environmental impact statements which are being or will be prepared

that are related to but are not part of the scope of the impact statement

under consideration.

(6) Identify other environmental review and consultation requirements

so the lead and cooperating agencies may prepare other required

analyses and studies concurrently with, and integrated with, the

environmental impact statement as provided in § 1502.25.

(7) Indicate the relationship between the timing of the preparation of

environmental analyses and the agency's tentative planning and

decisionmaking schedule.

40 C.F.R. §1501.7.

47.     The Forest Service did not prepare a Record of Decision for the Timber Sale.

48.     The Forest Service did not prepare a Decision Notice for the Timber Sale.

49.     The Forest Service did not prepare a Decision Memo for the Timber Sale.

50.     The Forest Service did not conduct scoping for the Timber Sale.

51.   There is no public analysis of the direct, indirect, and cumulative effects of this Timber Sale in addition to other past, present, and reasonably foreseeable private, state, and federal actions in the area.

52.   The approval of a specific logging project in a defined geographic area on a National Forest, and the written federal authorization of that logging project via a signed contract to sell timber on publicly-owned National Forest lands in that area to a private party constitutes a major federal action under NEPA and its implementing regulations.  At the very least, the Forest Service should have conducted scoping for the Timber Sale, and then analyzed the Timber Sale in either a categorical exclusion, Environmental Assessment, or EIS, culminating with either a Decision Memo, Decision Notice and Finding of No Significant Impact, or a Record of Decision. The Forest Service's failure to engage in any of these NEPA procedures for the Timber Sale violates NEPA.

53.   Moreover, to the extent that the Forest Service has a policy or practice of failing to conduct NEPA analyses for timber sales that it chooses to characterize as " routine maintenance consisting of removal of hazard trees along a private linear right-of-way" under 36 C.F.R. § 251.50(e)(3), that policy or practice violates NEPA.  The cited regulation only addresses

15

whether a National Forest special use permit is necessary; it does not excuse

the agency from conducting NEPA analysis. As discussed above, the statute

and regulations require NEPA analysis for timber sales. Even if a categorical

exclusion was available, the agency still needs – in the very least – to conduct

scoping, but also may be required to publish a Decision Memo, Decision

Notice, or Record of Decision with attendant analysis, depending on the

factual circumstances.

## SECOND CLAIM FOR RELIEF

### The Forest Service's failure to demonstrate compliance with the Forest Plan violates NFMA.

54.    All previous paragraphs are incorporated by reference.

55.    NFMA mandates that individual timber sales on National Forests must be

consistent with the governing forest plan. 16 U.S.C. §1604(i).

56.    A violation of a forest plan provision is a violation of NFMA.

57.    Additionally, an agency's failure to affirmatively demonstrate compliance

with a forest plan is a violation of NFMA.

58.    With regards to timber sales in particular, Forest Service regulations explicitly

require: "The approving officer will insure that each timber sale contract . . .

is consistent with applicable land and resource management plans . . . ." 36 C.F.R. §223.30.

59.    The Forest Service failed to demonstrate that the Timber Sale complies with the provisions of the Beaverhead-Deerlodge Revised Forest Plan. There is no disclosure of all of the relevant Forest Plan provisions that apply to the Timber Sale area with an analysis of whether the Timber Sale complies with the provisions. The only document produced by the Forest Service on this issue contains an inadequate one sentence conclusion: on a one page checklist, one phrase states "[a]ction reviewed for consistency with RFP Objectives and Stds" next to a "Y" with (a) no explanation of how and when the purported review took place, (b) no citation to the name of the document containing the purported review, and (c) no attachment or disclosure of any document containing the purported review. This cryptic and conclusory sentence fragment does not demonstrate that the Timber Sale complies with the Forest Plan.

60.    The Forest Service's failure to demonstrate that the Timber Sale complies with all provisions of the Revised Forest Plan violates NFMA.

17

## VII.  RELIEF REQUESTED

For all of the above-stated reasons, Plaintiffs request that this Court award the following relief:

A.    Declare that the Timber Sale violates the law;

B.    Enjoin implementation of the Timber Sale and issue any other such injunctive relief as may be warranted, including but not limited to mitigation and monitoring;

C.    Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees under the EAJA; and

D.    Grant Plaintiffs any such further relief as may be just, proper, and equitable.


Respectfully submitted this 9th Day of March 2016.

> _/s/ Rebecca K. Smith_
> Rebecca K. Smith
> PUBLIC INTEREST DEFENSE CENTER, PC
>
> Timothy M. Bechtold
> BECHTOLD LAW FIRM, PLLC
>
> Attorneys for Plaintiffs